UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael Anthony Lindsey,

        Plaintiff,

v.

City of Minneapolis; Minneapolis Police Department; and Sgt. Christopher House, Minneapolis Police Officer,

        Defendants.

Civ. No. 15-1202 (WMW/BRT)

REPORT AND RECOMMENDATION

Michael Anthony Lindsey, OID #18004-041, USP McCreary, P.O. Box 3000, Pine Knot, KY 42635, *pro se* Plaintiff.

Tracey N. Fussy, Esq., Minneapolis City Attorney's Office, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

    In his second amended complaint, Michael Anthony Lindsey claims that he was denied due process when, following his arrest by state authorities on April 6, 2014, he was detained in the Hennepin County Jail for sixty-three days without being informed of the criminal charges against him or receiving a copy of the state criminal complaint. (Doc. No. 54, Pl.'s Second Am. Compl. 4–5.) Court records show that, within days of his arrest, Lindsey was charged in Minnesota with unlawfully possessing a firearm and fleeing a police officer in a motor vehicle, held over for trial based on a judicial finding of probable cause to support the charges against him, and brought before a Hennepin County judge for an initial appearance. Lindsey remained in state custody from the time

of his arrest until June 2014, when he was transferred to federal custody based on a federal indictment for possessing a firearm as an armed career criminal. He was ultimately convicted of that crime and sentenced to 262 months in federal prison.

Although Lindsey was detained by state authorities pursuant to a court order, charged via criminal complaint, and promptly brought before a judge for an initial appearance, he alleges that he was never informed of the state charges against him or received a copy of the criminal complaint. (*See* Second Am. Compl. 4–5.) He seeks to hold the lead investigator in the case, Minneapolis Police Sergeant Christopher House, and his municipal employers, the City of Minneapolis and the Minneapolis Police Department, liable under 42 U.S.C. § 1983 and requests $400,000 in damages. (*Id.*) He asserts that Sergeant House is responsible for the claimed due process violation because "it is his duty as an officer of [the] law to uphold the law, follow proper procedure[s] when prosecuting defendants, and inform[] a defendant of allege[d] charges when questioning [him]." (*Id.* at 5.) He asserts that the City of Minneapolis and the Minneapolis Police Department are likewise responsible for the alleged due process violation because Sergeant House is a city employee. (*Id.*)

The defendants have moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 58, Defs.' Mot. to Dismiss.) They argue that the Minneapolis Police Department is not a distinct legal entity amenable to suit, but merely a subdivision of the larger municipal government, and that Sergeant House had no personal duty to inform Lindsey of the charges against him. (*Id.* at 5–8.) For the reasons stated below, this Court agrees that Lindsey has failed to state a plausible claim for relief

against Sergeant House, the Minneapolis Police Department, or the City of Minneapolis. While he assuredly had a right to be informed of the charges against him, the duty of doing so fell on the judge who presided over his initial state-court appearance, not law enforcement officials such as Sergeant House. Because Sergeant House, the Minneapolis Police Department, and the City of Minneapolis are not directly responsible for the alleged due process violation, this Court recommends that Lindsey's claims against them be dismissed under Rule 12(b)(6) for failure to state a claim for relief.

## I.  BACKGROUND

When faced with a Rule 12(b)(6) motion to dismiss, a court must accept a plaintiff's well-pleaded factual allegations as true and may examine certain materials outside the pleadings, including matters of public record. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014); *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011). A court need not, however, assume the truth of a complaint's conclusory statements, including legal conclusions couched as factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), nor must it accept allegations contradicted by matters subject to judicial notice, such as the records of state court proceedings. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ."); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) ("Federal courts may take judicial notice of proceedings in other courts of record.") (quotation omitted); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123 (6th Cir. 1971) (explaining that courts "are

not bound by allegations that are clearly unsupported and unsupportable" because they "conflict with facts judicially known to the Court"). Applying those principles, the facts relevant to the defendants' motion to dismiss are as follows.

On April 6, 2014, Lindsey was arrested by the Minneapolis police and taken to the Hennepin County Jail, where he was later questioned by Sergeant House. (Second Am. Compl. 4; Doc. No. 20, Ex. 3, State Crim. Compl. 2.) Lindsey alleges that House did not inform him of the crime that he allegedly committed. (Second Am. Compl. 4–5.) After securing a prosecutor's authorization, Sergeant House filed a criminal complaint in Hennepin County District Court on April 8, 2014, charging Lindsey with unlawfully possessing a firearm after being convicted of a crime of violence and fleeing a peace officer in a motor vehicle. (State Crim. Compl.) According to the complaint, officers had been dispatched in the early morning hours of April 6 on a call of "shots fired," encountered Lindsey in his car, and attempted to stop the vehicle. (*Id.* at 2.) Lindsey initially fled the scene, but was eventually stopped and arrested. (*Id.*) A search of Lindsey's car incident to his arrest uncovered a semi-automatic handgun under the front passenger seat along with a spent bullet casing on the floorboard. (*Id.*). A subsequent check of his criminal record revealed three prior convictions for second-degree assault. (*Id.*) Hennepin County Judge Daniel Moreno found probable cause to support the criminal charges against Lindsey and ordered his continued detention. (*Id.* at 3.)

The very next day, April 9, 2014, Lindsey was brought before Hennepin County Judge Kathryn L. Quaintance for an initial appearance on the criminal complaint. (Doc. No. 20, Ex. 4, Tr. of First Appearance.) The transcript of the initial appearance shows

4

that Lindsey was represented by a court-appointed public defender and that bail was set at $100,000. (*Id.* at 1–3.) It does not, however, indicate that Judge Quaintance informed Lindsey of the charges against him or ensured that he had received a copy of the criminal complaint. (*Id.*) Lindsey claims that Judge Quaintance did neither. (Second Am. Compl. 5; *see also* Doc. No. 73, Pl.'s Am. Mem. of Law 2.) Thereafter, on May 6, 2014, Judge Quaintance held a pretrial hearing, during which Lindsey's appointed counsel represented that she was still reviewing the State's discovery and that her client was "in no hurry to get to trial." (Doc. No. 20, Ex. 5, Hr'g Tr. 2.) Lindsey agreed to waive his right to a speedy trial based on the ongoing discovery and the prospect of requesting a suppression (*i.e.*, *Rasmussen*) hearing. (*Id.* at 3.) A month later, in early June 2014, the federal government indicted Lindsey for unlawfully possessing a firearm as an armed career criminal, a charge stemming from the same incident underlying the state criminal proceedings. (Doc. No. 20, Ex. 6, Indictment.) In light of the federal prosecution, Minnesota dismissed the state criminal charges and transferred Lindsey to federal custody. (*See* Doc. No. 20, Ex. 7, State's Dismissal of Compl.) Following a jury trial, Lindsey was convicted in federal court of unlawfully possessing a firearm as an armed career criminal and sentenced to 262 months in prison. *See United States v. Lindsey*, No. 14-cr-186, Doc. No. 90 (D. Minn. July 1, 2015).

## II. ANALYSIS

To withstand dismissal under Rule 12(b)(6) for failure to state a claim on which relief may be granted, a complaint must state a facially plausible claim that "the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Section 1983

creates a federal cause of action against state officials who, through their own conduct, deprive a person of a right secured by the U.S. Constitution or federal law. 42 U.S.C. § 1983; *see also Iqbal*, 556 U.S. at 676. Because § 1983 "does not sanction tort by association," *Smith v. City of Minneapolis*, 754 F.3d 541, 547 (8th Cir. 2014), state officials may not be held vicariously liable for the allegedly unconstitutional acts of others, but only for their own misconduct, *Iqbal*, 556 U.S. at 676–77. Likewise, "[a] municipality cannot be held liable under § 1983 solely because it employs a tortfeasor," but only if "a municipal policy or custom caused a plaintiff to be deprived of a federal right." *L.L. Nelson Enter., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 811 (8th Cir. 2012) (quotation omitted). Liability under § 1983, in other words, "requires a causal link to, and direct responsibility for, the [claimed] deprivation of rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quotation omitted).

In his second amended complaint, Lindsey seeks to hold Sergeant House, the Minneapolis Police Department, and the City of Minneapolis liable under § 1983 for an alleged due process violation stemming from his extended detention without being informed of the state criminal charges against him. (Second Am. Compl. 4–5.) The crux of Lindsey's claim is that Sergeant House failed to advise him of the charges during his post-arrest questioning and that his initial appearance before Hennepin County Judge Kathryn Quaintance did not comply with Minnesota Rule of Criminal Procedure 5.01, which requires the court to inform the defendant of the charges and ensure that he has received a copy of the state criminal complaint. (*See id.* at 4–5; Pl.'s Am. Memo. of Law 1–5.) Lindsey's allegations, even if true, do not state a plausible § 1983 claim against

6

Sergeant House, the Minneapolis Police Department, or the City of Minneapolis for violating his due process rights.

As an initial matter, the Minneapolis Police Department is not a distinct legal entity subject to suit in its own right; it is simply a department or subdivision of the larger municipal government. *See El-Alamin v. Radke*, 369 F. App'x 770, 771 (8th Cir. 2010) ("[T]he Minneapolis Police Department . . . is not a suable entity . . . ."); *Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) ("The West Memphis Police Department and West Memphis Paramedic Services are not juridical entities suable as such. They are simply departments or subdivisions of the City government."); *Polta v. City of St. Paul Police Dep't*, No. 06-1014, 2006 WL 1174210, at *2 (D. Minn. May 1, 2006) ("A municipal police department is simply not a suable entity; it is merely a part of some larger municipal government, and has no separate legal existence by itself."). Moreover, Lindsey cannot hold the City of Minneapolis liable for Sergeant House's alleged misconduct simply because he "works for the City." (Second Am. Compl. 5.) A municipality is not liable under § 1983 for the alleged misdeeds of one of its employees "solely on the basis of the existence of an employer-employee relationship," but only if a "municipal policy or custom . . . caused the plaintiff's injury." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) (quotations omitted). Lindsey has not claimed that Sergeant House's allegedly unconstitutional conduct was committed pursuant to an official municipal policy or custom, let alone identified any such policy or custom. *See id.* ("[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury.")

(quotations omitted); *Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007) ("A claim brought against a municipality under § 1983 is sustainable only if a constitutional violation has been committed pursuant to an official custom, policy, or practice of the city . . . .").

Lindsey's claims against Sergeant House, the Minneapolis Police Department, and the City of Minneapolis face a more fundamental problem — namely, none of those defendants is directly responsible for the claimed due process violation involving the alleged lack of notice of the state criminal charges against him. For constitutional purposes, an extended pretrial detention must satisfy two requirements. Under the Fourth Amendment, a person arrested without a warrant is entitled to a timely judicial determination of probable cause "as a prerequisite to extended restraint of [his] liberty." *Gerstein v. Pugh*, 420 U.S. 103, 114, 126 (1975). And under the Due Process Clause, pretrial detainees have a right to a reasonably prompt initial appearance before a judicial officer, which "serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent." *Hayes v. Faulkner Cty., Ark.*, 388 F.3d 669, 673 (8th Cir. 2004) (quoting *Coleman v. Frantz*, 754 F.2d 719, 724 (7th Cir. 1985), *abrogated on other grounds by Benson v. Allphin*, 786 F.2d 268 (7th Cir. 1986)). That includes informing the detainee of the charges against him and his right to counsel, as required by the Sixth Amendment; informing the detainee of his Fifth Amendment right against compelled self-incrimination; and setting or reviewing the detainee's bail to ensure consistency with the Eighth Amendment's prohibition against excessive bail. *Coleman*, 754 F.2d at 724.

Minnesota vindicates these rights through various provisions of its Rules of Criminal Procedure. Rule 4.02 requires law enforcement officials to promptly file a criminal complaint following a detainee's warrantless arrest, to obtain a judicial determination of probable cause to warrant further detention, and to bring the detainee before a judge for an initial appearance within "36 hours after the arrest . . . or as soon as a judge is available." Minn. R. Crim. P. 4.02, subd. 5. At that initial appearance, the court is tasked with informing the defendant of the charges against him and his constitutional rights, ensuring that he has received a copy of the charging document, and setting bail or other conditions of release. Minn. R. Crim. P. 5.01. Under Minnesota law, an arrestee who is not subject to a prompt criminal complaint, judicial determination of probable cause, or initial appearance must be released. Minn. R. Crim. P. 4.02, subd. 5.

Here, court records confirm that Sergeant House promptly filed a criminal complaint against Lindsey within two days of his arrest, that a judge found probable cause to detain him pending further proceedings, and that he was timely brought before Judge Quaintance for an initial appearance within 36 hours of his arrest. Sergeant House had no personal duty, constitutional or otherwise, to inform Lindsey of the charges against him; that responsibility fell on the judge who presided over his initial appearance. *See Devenpeck v. Alford*, 543 U.S. 146, 155 (2004) ("While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required."); Minn. R. Crim. P. 5.01(a), (c) (providing that "the court" must inform the defendant at his initial appearance of the charges against him and "ensure [he] has a copy of the charging document"). Even

9

assuming that Judge Quaintance failed to discharge that duty, and that the lapse rose to the level of a constitutional violation, Sergeant House cannot be held liable under § 1983 for the judge's missteps. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Granda*, 472 F.3d at 569 (holding that a municipality could not be held liable for a judge's allegedly illegal order of incarceration); *Coleman*, 754 F.2d at 725 ("[T]he prosecutor's intransigence [in failing to arrange a detainee's initial appearance] cannot, in our view, be transferred to the [Sheriff] who made every effort to secure a timely first appearance for plaintiff . . . ."). Nor can Sergeant House be personally faulted for failing to release Lindsey following his allegedly deficient initial appearance, as Lindsey was subject to a court order of detention. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1070 (7th Cir. 2012) ("For the Sheriff to have released Holloway after this initial hearing would have required the Sheriff to go against a court order, and this court has held that there is no basis for an award of damages against executive officials whose policy is to carry out the judge's orders.") (quotation and citation omitted); *Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010) (holding that a prison warden could not be held liable for a plaintiff's extended detention where the detention was court ordered).

At most, Sergeant House had a duty to ensure that Lindsey had a judicial probable-cause determination and an initial appearance as prerequisites to his continued pretrial detention, both of which were undoubtedly done in this case. Whatever due process violation, if any, occurred at Lindsey's initial appearance is attributable to the

presiding judge, not Sergeant House or his municipal employers.[1] Further, that Judge Quaintance would be entitled to absolute judicial immunity for any constitutional defects that may have occurred at the initial appearance does not warrant holding Sergeant House liable for her actions.[2] *See Granda*, 472 F.3d at 567–69 (refusing to hold a municipality liable under § 1983 for a judge's allegedly unlawful incarceration order even though the judge was "entitled to judicial immunity because her decision to incarcerate [the plaintiff] was a judicial one not made in the absence of jurisdiction"); *see also Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978) (explaining that judges are entitled to absolute immunity from civil liability for actions taken in their judicial capacity, even when those actions are "in error," "done maliciously," or "in excess of [the judge's] authority"). Not every claimed constitutional violation is subject to civil redress under § 1983, particularly where, as here, those directly responsible are entitled to immunity from suit. *See Mireles v. Waco*, 502 U.S. 9, 10 (1991) ("Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him,

---

[1] For purposes of Rule 12(b)(6), this Court accepts Lindsey's allegation that he was never informed of the state charges against him, including at his initial appearance.

[2] Lindsey previously sought to amend his complaint to include Judge Quaintance as a named defendant. (*See* Doc. No. 40.) The Court denied leave to amend as futile because Judge Quaintance would be entitled to absolute judicial immunity "for any acts or omissions taken while presiding over his initial state-court appearance," including failing to notify Lindsey of the charges against him and ensure that he received a copy of the state criminal complaint. (Doc. No. 45, 9/10/15 Order 3–4.)

shall be free to act upon his convictions, without apprehension of personal consequences to himself.") (quotation omitted).

Because none of the defendants named in this lawsuit, through their own actions, personally violated Lindsey's due process rights, Lindsey has failed to state a plausible § 1983 claim against them. This Court therefore recommends that the defendants' motion to dismiss be granted and that Lindsey's second amended complaint be dismissed with prejudice pursuant to Rule 12(b)(6).

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants City of Minneapolis, Minneapolis Police Department, and Sergeant Christopher House's motion to dismiss (Doc. No. 58) be **GRANTED**; and

2. Plaintiff Michael Anthony Lindsey's second amended complaint (Doc. No. 54) be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

Date: March 30, 2016

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report by **April 15, 2016**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).